Jennifer Hoekel
HUSCH BLACKWELL LLP
Nevada State Bar Number 12775
8001 Forsyth Boulevard, Suite 1500
St. Louis, Missouri 63105
Phone: (314) 345-6123
Fax: (314) 480-1505
Email: jennifer.hoekel@huschblackwell.com

*Attorneys for Defendant SilverSummit Health Plan, Inc.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEVADA
# SOUTHERN DIVISION

| | |
|---|---|
| DIGNITY HEALTH, a California non-profit public benefit corporation, d/b/a ST. ROSE DOMINICAN HOSPITAL,<br><br>            Plaintiff,<br><br>    v.<br><br>SILVERSUMMIT HEALTH PLAN, INC.; DOES 1 THROUGH 25; and ROES 1 THROUGH 25,<br><br>            Defendants. | Case No. 2:25-cv-00576-JAD-EJY<br><br>Judge Jennifer A. Dorsey<br><br>Magistrate Judge Elayna J. Youchah<br><br>**DEFENDANT'S MOTION TO DISMISS**<br><br>**(ORAL ARGUMENT REQUESTED)** |

Defendant SilverSummit Health Plan, Inc. ("SilverSummit"), by its attorneys, moves to dismiss the complaint submitted by plaintiff Dignity Health d/b/a St. Rose Dominican Hospital ("Dignity Health") pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of this Motion, SilverSummit submits the accompanying Memorandum of Points and Authorities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Out-of-network provider Dignity Health brings this suit against SilverSummit, alleging that SilverSummit underpaid Dignity Health for certain unspecified emergency services provided at two Nevada hospital locations to participants in SilverSummit's Ambetter health plan. As a threshold matter, the complaint purports to identify the patients and services at issue in an accompanying spreadsheet, but that spreadsheet is not attached to the complaint and has not otherwise been provided to SilverSummit, despite the request of counsel. Even setting that deficiency aside, however, Dignity Health's conclusory allegations fail to state a claim under either of the complaint's asserted theories, and the complaint should therefore be dismissed. First, Dignity Health fails to state a claim for breach of implied-in-fact contract in count I because the complaint does not allege any *facts* that conceivably could give rise to an agreement to reimburse Dignity Health for its full "usual and customary" charges for the services rendered, let alone a plausible breach of any such hypothetical agreement. Second, Dignity Health cannot proceed under a quantum meruit theory in count II, primarily because Dignity Health did not confer a benefit *on SilverSummit* (as opposed to patients), even accepting the conclusory allegations in the complaint as true. For these reasons, as discussed further below, the court should dismiss the complaint.

**II.    BACKGROUND**

Dignity Health owns and operates St. Rose Dominican Hospital, which, as relevant here, maintains locations in Henderson and Las Vegas, Nevada. Dkt. 1-1 at ECF pp. 8-17 ("Compl.") ¶ 1. SilverSummit offers and administers health plans in Nevada, including its Ambetter marketplace insurance product. *Id.* ¶ 2; *see also* Dkt. 1, Notice of Removal, ¶¶ 10-11. Dignity Health has not contracted with SilverSummit to participate in the network of healthcare providers for the Ambetter health plan and therefore constitutes

an "out-of-network" provider for purposes of that plan.[1]  Compl. ¶ 9.

In its complaint, Dignity Health alleges that SilverSummit underpaid Dignity Health for certain unspecified emergency services provided to participants in the Ambetter health plan.  *Id.* ¶¶ 7, 14-15.  Dignity Health alleges that, "[p]rior to admission and/or following stabilization in [Dignity Health's] emergency department, [Dignity Health] contacted [SilverSummit] to ascertain whether or not [SilverSummit] was responsible for the costs associated with the medically necessary services."  *Id.* ¶ 12.  According to the complaint, SilverSummit responded by providing "the relevant insurance verification and insurance coverage eligibility information" for the patients at issue.  *Id.*; *see also id.* ¶ 17 (alleging that SilverSummit "represented that the Patients are a beneficiary of Silver Summit Health Plan's health plan and authorized Plaintiffs to continue treating the Patients").  Dignity Health also alleges that it "continued to update" Silver Summit regarding the patients' "clinical disposition" throughout the course of their hospital stay.  *Id.* ¶ 19.

Following these communications, Dignity Health alleges that SilverSummit paid only a small portion of Dignity Health's "usual and customary charges reflecting the reasonable value of the medically necessary services."  *Id.* ¶¶ 14-15 (alleging that SilverSummit paid $39,119 out of $346,806 in usual and customary charges, and seeking damages in the amount of $261,856, "exclusive of interest").  Dignity Health alleges that full payment of its usual and customary charges was required by the parties' communications within the context of the federal Emergency Medical Treatment and Active Labor Act ("EMTALA"), 42 U.S.C. § 1395dd, which requires hospitals to provide medical screening and necessary

---

[1] Dignity Health *has* contracted with SilverSummit, and therefore is an "in-network" provider, for other lines of business, including SilverSummit's managed Medicaid plan.  SilverSummit expressly reserves, and does not waive, the right to move to compel arbitration of, and raise any other defenses with respect to, any claims encompassed by Dignity Health's participating provider agreement, to the extent Dignity Health purports to assert such claims here.  As noted above, the complaint purports to identify the patients and services at issue in an accompanying spreadsheet, but that spreadsheet has not been filed or otherwise provided to SilverSummit.  *See, e.g.*, Compl. ¶ 7.

3

stabilizing treatment for emergency medical conditions, regardless of the patient's ability to pay. *Id.* ¶¶ 10, 17.

Based on these allegations, Dignity Health purports to assert claims for breach of implied-in-fact contract (count I) and quantum meruit (count II). *Id.* ¶¶ 16-33. Because Dignity Health's allegations are insufficient to state either claim, SilverSummit now moves to dismiss.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter to 'state a claim to relief that is plausible on its face.'" *Bonavito v. Nevada Property 1 LLC*, No. 2:13-cv-417, 2014 WL 1347051, at *1 (D. Nev. Apr. 2, 2014) (Dorsey, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Facts that are "merely consistent with" liability are insufficient, *Iqbal*, 556 U.S. at 678, and legal conclusions and conclusory allegations are insufficient to withstand Rule 12(b)(6) scrutiny. *Cirino v. Ocwen Loan Serv. LLC*, 815 F. Appx. 204, 205 (9th Cir. 2020); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When a complaint lacks plausible factual allegations or a cognizable legal theory, dismissal at the pleading stage is required. *Bonavito*, 2014 WL 1347051, at *1; *see Ballinger v. City of Oakland*, 24 F.4th 1287, 1292 (9th Cir. 2022) (explaining that dismissal is appropriate "where the complaint lacks a cognizable legal theory or sufficient facts to support" such a theory) (internal quotation marks and citations omitted).

## IV. ARGUMENT

The court should dismiss the complaint because, even setting aside Dignity Health's failure to provide SilverSummit with the spreadsheet identifying the patients and services at issue, *see, e.g.*, Compl. ¶ 7, the complaint's conclusory allegations fail to state a plausible claim.[2] First, Dignity Health fails to state a claim for breach of implied-in-fact contract in count I because the complaint does not allege any

---

[2] SilverSummit expressly reserves, and does not waive, the right to raise additional arguments in support of dismissal if and when Dignity Health discloses the spreadsheet and thus provides further information about the claims at issue.

4

*facts* that conceivably could give rise to an agreement to reimburse Dignity Health for its full usual and customary charges for the services rendered, let alone a plausible breach of any such hypothetical agreement. Second, Dignity Health cannot proceed under a quantum meruit theory in count II because Dignity Health did not confer a benefit *on SilverSummit* (as opposed to patients), even accepting the conclusory allegations in the complaint as true. For these reasons, as discussed further below, the court should dismiss the complaint.

      **A.**     **Deficient Implied-in-Fact Contract Claim in Count I**

The court should dismiss count I because Dignity Health has not alleged conduct giving rise to an implied contract between the parties or a plausible breach. Although "the terms of an express contract are stated in words while those of an implied contract are manifested by conduct," both "types of contracts are founded upon an ascertainable agreement." *Mizrahi v. Wells Fargo Home Mortg.*, No. 2:09-cv-01387, 2010 WL 2521742, at *3 (D. Nev. June 16, 2010) (citing *Smith v. Recrion Corp.*, 541 P.2d 663, 665 (Nev. 1975) and *Back Streets, Inc. v. Campbell*, 601 P.2d 54, 55 (Nev. 1979)). Accordingly, "to prevail on the breach of implied contract theory," a court must find "that both parties intended to contract and that promises were exchanged," demonstrating a "meeting of the minds" on material terms. *Id.* (citing *Smith*, 541 P.2d at 665).

Here, Dignity Health has not alleged *facts* plausibly demonstrating an ascertainable agreement to reimburse Dignity Health for the full value of its usual and customary charges for the out-of-network emergency services rendered. To the contrary, Dignity Health merely alleges that, "[p]rior to admission and/or following stabilization in [Dignity Health's] emergency department," Silver Summit verified "insurance coverage eligibility," represented that the patients were members of SilverSummit's Ambetter health plan, authorized continued treatment, and partially paid for the services rendered. Compl. ¶¶ 12, 14, 17. Even taking these threadbare and conclusory allegations at face value, they do not suggest, let alone plausibly plead, any agreement on the part of SilverSummit to pay Dignity Health *a certain amount*

or *percentage of its usual and customary charges*. As courts across the country have recognized, "allegations regarding mere verification of eligibility and benefits, authorization of services, and partial payment are insufficient to plead an implied-in-fact contract to pay the [usual and customary] rate for the services rendered." *Twin Cities Cmty. Hosp., Inc. v. Ennis, Inc.*, No. 2:23-cv-10202, 2024 WL 944232, at *4 (C.D. Cal. Feb. 8, 2024) (collecting cases); *see Stanford Health Care v. Blue Cross Blue Shield of N. Carolina, Inc.*, No. 21-cv-04598, 2022 WL 195847, at *6 (N.D. Cal. Jan. 21, 2022) (joining "the majority of courts" that have deemed allegations of benefit verification, service authorization, and partial payment "to have inadequate support to survive a motion to dismiss"); *RMP Enters., LLC v. Conn. Gen. Life Ins. Co.*, No. 9:18-cv-80171, 2018 WL 6110998, at *8 (S.D. Fla. Nov. 21, 2018) ("Courts across the country agree that an insurer's verification of coverage is not a promise to pay a certain amount."); *DAC Surg. Partners P.A. v. United Healthcare Servs., Inc.*, No. 4:11-cv-1355, 2016 WL 7157522, at *4 (S.D. Tex. Dec. 7, 2016) ("[E]ven assuming that it was [the provider's] practice to make verification calls, the calls were actually made, and the insurance was verified, that verification was not the same as a promise of payment."); *but see Prime Healthcare Servs. v. Hometown Health Providers Ins. Co., Inc.*, No. 3:21-cv-00226, 2022 WL 1692525, at *7 (D. Nev. May 26, 2022) (denying motion to dismiss implied contract claim based on parties' course of dealing and the specific contents of the patients' benefit plans).

Dignity Health's allegations are particularly deficient because they generalize across what may have been numerous alleged conversations with SilverSummit and thus do not provide SilverSummit with sufficient notice of "what communications occurred, when and with whom these communications occurred, and what representations were made therein," such that SilverSummit could reasonably be expected to defend this case. *Twin Cities Cmty. Hosp., Inc.*, 2024 WL 944232, at *4; *see Twombly*, 550 U.S. at 555 (complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests") (internal quotation marks, citations, and alterations omitted). Dignity Health invokes the federal EMTALA statute to support its claim, but Dignity Health's pre-existing legal obligation to provide

6

emergency care consistent with that statute, regardless of the patients' ability to pay, actually makes it *less plausible* that a meeting of the minds as to a specific payment amount occurred, and means that Dignity Health has not alleged consideration (*i.e.*, a bargained-for-exchange) to support any implied contract claim. *See Ata Mazaheri, M.D. Inc. v. UnitedHealthcare Ins. Co. Inc.*, No. 23-cv-0865, 2023 WL 5167362, at *4 (C.D. Cal. July 10, 2023) (discussing the distinction between emergency and non-emergency services and observing that "the emergency nature of the services performed suggests that no meeting of the minds could have possibly occurred" because the provider was required to render services regardless of the patient's ability to pay). Because Dignity Health has not plausibly alleged that the parties entered into an agreement to pay Dignity Health the full value of its usual and customary charges for out-of-network emergency services, dismissal of count I is warranted.

**B.     Deficient Quantum Meruit Claim in Count II**

The court should also dismiss count II because Dignity Health has failed to plead a viable claim for quantum meruit. Under Nevada law, "[q]uantum meruit is pled in two distinct contexts: contract and restitution." *Risinger v. SOC LLC*, 936 F.Supp.2d 1235, 1247 (D. Nev. 2013) (citing *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 256 (Nev. 2012)). "In the former, quantum meruit applies in actions based upon contracts implied-in-fact," which, as noted above, "is found when 'the parties intended to contract and promises were exchanged, the general obligations for which must be sufficiently clear.'" *Id.* (quoting *Certified Fire Prot. Inc.*, 283 P.3d at 256). To the extent Dignity Health seeks to rely on quantum meruit as some sort of supplement to its implied-in-fact contract claim, count II fails for the same reasons as count I—*i.e.*, no plausible *factual* allegations demonstrating an ascertainable agreement between the parties. *See Certified Fire Prot. Inc.*, 283 P.3d at 253 ("To recover in quantum meruit, a party must establish legal liability on either an implied-in-fact contract or unjust enrichment basis.").

Dignity Health also fails to state a claim to the extent it is attempting to assert an independent claim for quantum meruit as a means to obtain restitution for alleged unjust enrichment. *See Risinger*,

936 F. Supp. 2d at 1247 (explaining that "'[q]uantum meruit's other role is in providing restitution for unjust enrichment'"(quoting *Certified Fire Prot. Inc.*, 283 P.3d at 256)). "A plaintiff seeking to recover in quantum meruit must demonstrate . . . that its services conferred a benefit *on the defendant*." *Sierra Devel. Co. v. Chartwell Advisory Grp., Ltd.*, 325 F. Supp. 3d 1102, 1106 (D. Nev. 2018) (internal quotation marks and citations omitted) (emphasis added). In light of this requirement, courts "have refused to recognize an unjust enrichment or quantum meruit cause of action based on healthcare services provided to a participant or beneficiary of a healthcare insurance policy or plan." *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 962 F. Supp. 2d 887, 898 (S.D. Tex. 2013), *aff'd in part, rev'd in part on other grounds*, 614 Fed. Appx. 731 (5th Cir. 2015). This is not surprising, given that what an insurer receives when a provider renders services "is a ripened obligation to pay money to the insured—which hardly can be called a benefit" for purposes of quantum meruit. *Electrostim*, 962 F. Supp. 2d at 898; *see Stanford Health Care*, 2022 WL 195847, at *10 ("Stanford can only plausibly allege a direct benefit to [the insurer's] members, which courts have consistently found not to be sufficient for a quantum meruit claim").

Here, Dignity Health alleges in a conclusory fashion that it conferred a benefit on SilverSummit by providing out-of-network emergency services to participants in the Ambetter health plan. Compl. ¶¶ 28-33. This is precisely the type of alleged "benefit" that cannot support a quantum meruit or unjust enrichment claim, even if Dignity Health had alleged sufficient *facts* in the complaint about the nature of the underlying events and services at issue (it has not). *See Electrostim*, 962 F. Supp. 2d at 898; *IV Sols., Inc. v. United HealthCare Servs., Inc.*, No. 16-cv-09598, 2017 WL 3018079, at *11 (C.D. Cal. July 12, 2017) (dismissing quantum meruit claim because "it was [the insurer's] members, not [the insurer] itself, who benefitted from [the provider's] services."); *Encompass Office Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 966 (E.D. Tex. 2011) (same because "services were rendered to and for [the provider's] patients, not [the insurer]"). Because Dignity Health cannot identify any benefit conferred on

SilverSummit independent of the services Dignity Health provided to SilverSummit's members, the court should dismiss the quantum meruit claim in count II.

V. **CONCLUSION**

For the foregoing reasons, the court should dismiss the complaint.

        Respectfully submitted,

        **HUSCH BLACKWELL LLP**

        By: *s/ Jennifer Hoekel*
            8001 Forsyth Boulevard, Suite 1500
            St. Louis, Missouri 63105

            Abraham J. Souza (*Pro Hac Vice* Forthcoming)
            8001 Forsyth Boulevard, Suite 1500
            St. Louis, Missouri 63105
            Phone: (314) 345-6225
            Fax: (314) 480-1505
            Email: abraham.souza@huschblackwell.com

        *Attorneys for SilverSummit Health Plan, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served pursuant to the district court's ECF system as to ECF filers, if any, and was sent to the following counsel of record for plaintiff by email and U.S. Mail on April 4, 2025:

Scott Van Alfen
500 North Brand Boulevard, Suite 1450
Glendale, California 91203
svalfen@sacfirm.com

                                         *s/ Jennifer Hoekel*